IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LAURA ANN SALINAS | § | |
| | § | |
| V. | § | A-15-CV-567-AWA |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff's Complaint seeking reversal of the Social Security Administration's final decision (Dkt. No. 1); Plaintiff's Brief in Support of Claim (Dkt. No. 17); and Defendant's Brief in Support of the Commissioner's Decision (Dkt. No. 18). Also before the Court is the Social Security record filed in this case (cited as "Tr.").

**I. General Background**

Plaintiff Laura Ann Salinas (Salinas) who was born on July 21, 1969, was forty-four years old at the time of the ALJ's decision. (Tr. 92). Salinas filed an application for disability benefits on January 24, 2012, and an application for supplemental security income on March 26, 2012, alleging a disability onset date of December 31, 2009. (Tr. 48, 50). The Social Security Administration initially denied Salinas' application on August 7, 2012, and then again upon reconsideration on November 14, 2012. She requested a hearing before an administrative law judge (ALJ) and that hearing was held on September 6, 2013. (Tr. 58-64, 67-72, 26-47). The ALJ held a hearing in Austin, Texas. Salinas testified at the hearing. (Tr. 26, 28). A Vocational Expert (VE) also testified at the hearing. (Tr. 30-31, 42-46).

The ALJ issued a decision on February 11, 2014, finding that Salinas has severe degenerative disc disease of the cervical and lumbar spine, lumbar radiculopathy, fibromyalgia, left hip

degenerative joint disease, bilateral carpal tunnel syndrome with ulnar neuropathy, and obesity. (Tr. 13). The ALJ found that Salinas did not have an impairment or combination of impairments that met or equaled the criteria of any listed impairment. (Tr. 14-15). Overall, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work with minor exceptions. (Tr. 15).

The ALJ found Salinas unable to perform any of her past relevant work, however. The ALJ concluded that, based on Salinas' age, education, work experience, RFC finding and considering vocational expert testimony, Salinas was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 20-21). Accordingly, the ALJ found that Salinas was not disabled within the meaning of the Social Security Act. (Tr. 22). On May 5, 2015, the Appeals Council denied Salinas' requested review of the ALJ's decision, thereby making the ALJ's decision the Commissioner's final decision. (Tr. 1)

Salinas argues that the ALJ erred in finding that her spinal impairments do not meet the Listing's required level of severity.

## II. Legal Standards

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is disabled the Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

    4.      a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

    5.      if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *see also* 20 C.F.R. § 404.1520. A finding of disability or no disability at any step "is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). The claimant has the burden of proof for the first four steps; however, at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If the Commissioner "fulfills his burden of pointing out potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (internal quotation marks omitted).

    Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (internal quotation marks omitted). The Court considers "four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Id.* at 174. However, a reviewing court "may not reweigh the evidence, try the issues *de novo*, or substitute [its]

judgment for that of the [Commissioner]." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders*, 914 F.2d at 617 ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); *see also* 42 U.S.C. § 405(g).

### III.  Analysis

The sole issue Salinas presents for review is whether the ALJ erred in finding that Salinas' spinal impairments do not meet or equal the criteria set forth in Listing 1.04A. (Dkt. No. 17 at 2). Listings describe each of the major body system impairments that the Agency "consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). A claimant must satisfy all of the criteria to "meet" the listing.  20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3).  Listings 1.00 through 11.00., Listing 13.00, and Listings 14.00  pertain to physical impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Each physical impairment listing contains a set of signs or objective medical findings which must be present for the claimant's impairment to meet the listing. *See, e.g., id.* at § 4.02.  In her opinion, the ALJ states:

> The undersigned considered listing 1.04 when evaluating the claimant's evidence regarding her degenerative disc disease of the cervical spine and lumbar spine. However, the claimant does not meet or equal this listing because there is no evidence that her degenerative disc disease has resulted in compromise of a nerve root (including the cauda equina) or the spinal cord. (Ex. 7F/2, 31).

Tr. 14. Salinas complains that the ALJ erred because she failed to discuss and evaluate why Salinas' back and neck impairments fail to meet Listing 1.04. Salinas asserts that the ALJ's failure to properly discuss and analyze the evidence is contrary to the requirements set forth in *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), which Salinas characterizes as requiring the ALJ to discuss the

evidence supporting the ALJ's findings at each step of the sequential evaluation. Salinas argues that the ALJ erroneously summarily addressed the issue of nerve root compromise and failed to consider medical records containing evidence supporting Salinas' claim that her lumbar and cervical spine impairments meet Listing level severity.

> **A.     Listing 1.04**

Listing 1.04 pertains to disorders of the spine. To meet the listing, a claimant must have a diagnosed spinal impairment "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord," with additional medical findings delineated in subsections A through C. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 at § 1.04. Salinas argues that the ALJ erred in her evaluation of whether Salinas met Listing 1.04A. In addition to the above noted requirements, subsection A also requires that a claimant demonstrate the following:

> A.     Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . .

*Id.* Thus, to satisfy paragraph A, plaintiff must demonstrate: (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness); (4) sensory or reflex loss; and (5) positive straight leg raise test, in both the sitting and supine positions. In addition, the regulations note that "[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00D.

B.     *Audler* Analysis

Salinas complains that the ALJ erred because she included no discussion of why Salinas' neck and back impairments failed to meet the Listing. She argues that the ALJ's analysis contravenes *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), where the Court determined that the ALJ improperly "summarily concluded" that the claimant's severe impairments were "not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." In that case, the Court found the ALJ erred when she "offered nothing to support her conclusion at this step," and the Court determined that it "simply cannot tell whether her decision is based on substantial evidence or not." *Id.* (*citing Cook v. Heckler*, 783 F.2d 1168, 1172 (5th Cir. 1986)). In this case, the Commissioner argues, the ALJ adequately discussed the supporting evidence and explained why she found Salinas not disabled at step three throughout the remainder of her decision, although the discussion did not occur immediately following the step-three finding. (Tr. 14-20).

The ALJ's discussion of Listing 1.04A does not suffer the same deficiencies at issue in *Audler*. The ALJ did not merely summarily conclude at step three that Salinas' impairments did not meet listing level severity. Rather, the ALJ's discussion of her RFC assessment, the objective medical evidence, and the medical opinions of record provide clear and substantial evidence for her finding that Salinas' impairments did not meet or equal Listing 1.04A. The ALJ stated:

> Regarding the claimant's radiculopathy and degenerative disc disease of the cervical and lumbar spine, the record does not show that these conditions cause disabling weakness of the extremities. Dr. Patel's exam from August 8, 2012, revealed that the claimant walked with a normal gait and had normal motor strength, and reflexes; in addition, her straight leg raises were negative (Ex. 3F/23). The MRI of the claimant's cervical spine from July 3, 2013, revealed only mild disc space narrowing at C5-6 and C6-7, with mild bilateral facet osteoarthritis and these levels and mild bilateral neuroforaminal narrowing at C6-7 (Ex. 7F/2); these findings do not support the claimant's allegation of disabling pain in her neck. The claimant also had relatively

> normal musculoskeletal and neurologic exams on February 14, 2013 (Ex. 7F/20), and April 2, 2013 (Ex. 7F/26). The claimant's MRI of her lumbar spine on April 6, 2013, revealed only mild degenerative changes (Ex. 7F/31), and she reported that aquatic-based physical therapy was helpful on may 16, 2013 (Ex. 7F/37).

(Tr. 18). Thus, the ALJ did discuss in detail her reasons for finding that Salinas' spinal and neck impairments did not meeting the requirements of Listing 1.04A. The ALJ offered adequate support of her conclusion at step three, albeit the evidence for the conclusion was included in other portions of the ALJ's opinion. While the ALJ must consider the Listings in making a disability determination, "it is not required that the [ALJ] mechanically recite the evidence leading to [her] determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). *Id.* Salinas' argument that the ALJ erred pursuant to *Audler* is without merit.

    **C.**    **Salinas Did Not Meet the Listing Criteria for 1.04**

Salinas additionally asserts that the ALJ erred in not finding she meets the requirements for Listing 1.04 because it is not supported by the record evidence. She maintains that MRI's of her lumbar and cervical spine support that she meets the Listing criteria. She argues that, contrary to the ALJ's finding, the regulation does not require that the phrase "nerve root compression" appear in her medical records. Salinas relies on the MRI of her lumbar spine which notes "neural foraminal narrowing" and on medical records noting a "history of radiculopathy," which she argues is caused by compression of the roots of the spinal nerves in the lumbar region. Salinas also argues the evidence in the record supports that she meets the additional Listing requirements for neuro-anatomic pain, limitation in spinal motion, motor loss, and a positive straight leg raising test.

Both Fifth Circuit case law and the regulations clearly recognize that at step three of the sequential evaluation process the burden remains on Plaintiff to establish that her impairment meets or equals an impairment enumerated in the listings, not upon the Commissioner to prove that

Plaintiff does not satisfy a listing. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In order to meet a listing, "every element of the listing must be satisfied." *Huntington v. Apfel*, 101 F. Supp. 2d 381, 384 (D. Md. 2000).

While Listing 1.04A includes various medical findings necessary to meet the listing, those findings must be precipitated by "[e]vidence of nerve root compression." *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04A. Salinas asserts that other evidence in the record, including imaging of her lumbar and cervical spine, supports a finding of nerve root compression. The July 13, 2013 MRI of Salinas' cervical spine states that all cervical discs are "unremarkable" with the following exceptions:

> C5-C6: Mild disc space narrowing with broad-based posterior disc osteophyte-complex and mild bilateral facet osteoarthristis. No significant spinal canal stenosis and neuroforaminal narrowing.
>
> C6-C7: Mild disc space narrowing with broad-based posterior disc osteophyte-complex and mild bilateral facet osteoarthristis. These result in mild bilateral neuroforaminal narrowing.

Tr. 298. Similarly, the results of Salinas' lumbar spine MRI conducted on September 21, 2013, found no significant stenosis at any level with "mild bilateral neural foraminal narrowing at L5-S1." Tr. 326-27. This evidence of mild degenerative disease is insufficient to establish nerve root compression.

The ALJ recognized that an April 2013 lumbar spine MRI shows "mild bilateral neural foraminal narrowing at L5-S1" (Tr. 17, 327). However, a physician's assistant contemporaneously reported that there was "no restriction of movement" (Tr. 18-19, 321). On May 1, 2013, Dr. Nguyen reported that Salinas' "neurologic" and "musculoskeletal" systems were "intact" (Tr. 328). On May 16, 2013, another physician's assistant observed normal strength and range of motion in Salinas'

lower extremities (Tr. 19, 334). The ALJ also recognized that a July 2013 cervical spine MRI shows "mild bilateral neural foraminal narrowing at C6-7" (Tr. 18, 298). However, Salinas had normal strength and sensation in her bilateral upper and lower extremities (Tr. 18, 379). Thus, despite the MRI reports, the record evidence supports that Salinas did not met the Listing requirements.

Salinas cites to various medical records noting pain, fibromyalgia, depression/anxiety, carpal tunnel syndrome, and radiculopathy. (citing Tr. 203, 205, 207, 211, 213-15, 219, 224, 240, 241, 243, 245, 250-52, 254, 256, 257, 264, 265, 316, 322, 326-27, 340, 378-80). However, with the exception of the MRI results, the import of which is addressed above, and which the ALJ relied upon, none of these records relate to or mention nerve root compression, and radiculopathy "is legally insufficient to meet or equal Listing 1.04A" absent any evidence of nerve root compression. *Crowl v. Colvin*, Civil No. BPG-15-446, 2016 U.S. Dist. LEXIS 6896, at *5-6 (D. Md. Jan. 20, 2016) *(citing Smick v. Colvin*, 2015 WL 4092449, at *2 (D. Md. July 6, 2015)). Additionally, with the exception of the MRI's, none of the records cite to objective medical evidence of spinal nerve root compression; instead, Salinas cites to nerve conduction studies diagnosing carpal tunnel syndrome and her own reports of her previous diagnoses and pain. Neither MRI implicated spinal stenosis, which is the narrowing of the spinal canal, or other diagnoses sufficient to meet the Listing criteria. Salinas has failed to identify any evidence in the record of nerve root compression, and failed to establish that the ALJ erred in finding that she had none.

Additionally, Salinas failed to establish that the ALJ erred in finding she did not meet the additional Listing requirements of 1.04A – neuro-anatomic pain, limitation in spinal motion, and motor loss. The ALJ specifically addressed that the evidence of record "failed to demonstrate the presence of pathological clinical signs, significant medical findings, or neurological abnormalities"

(Tr. 18). *See* 20 C.F.R. part 404, subpt. P, app. 1, § 1.04A (to satisfy this listing, the record must demonstrate the presence of "limitation of motion of the spine, motor loss [atrophy with associated muscle weakness or muscle weakness] accompanied by sensory or reflex loss"). In addition to the evidence cited above , the ALJ pointed out that the record did not show that Plaintiff's lumbar and cervical spine impairments caused "disabling weakness of the extremities" (Tr. 18). *See Id.* (to satisfy Listing 1.04A, the record must demonstrate the presence of "motor loss," including "atrophy with associated muscle weakness" or simply "muscle weakness").

    Lastly, the evidence in the record supports that Salinas could not establish that she met the Listing 1.04A criteria on a sustained basis. Dr. Smith's May 2011 physical examination of Salinas shows that sensation was "intact," and she had "good" range of motion in her neck (Tr. 16, 215, 275). The ALJ pointed out that, according to Dr. Smith's June 2011 treatment note, Salinas had a "generally good response to medication" (Tr. 18, 216, 279). In February 2012, Dr. Smith again reported that Salinas had "good" reflexes and "intact" strength and sensation in her extremities (Tr. 16, 18-19, 219, 282). The ALJ emphasized that in May 2012 Dr. Smith opined that Salinas did not require assistance to walk, and she did not qualify for a handicapped parking sticker (Tr. 16-17, 225, 291). *See* 20 C.F.R. part 404, subpt. P, app. 1, § 1.00B2. Dr. Biral T. Patel's August 2012 examination of Salinas, showed "intact" gait and "heel-to-toe" walking, negative straight-leg-raise testing, and "5/5 motor strength in her bilateral lower extremities." (Tr. 17-19, 256). A May 2011 emergency room examination reports that Salinas was neurologically intact, and she had no range-of-motion limitation in her back (Tr. 16, 215, 265, 271). On November 13, 2012, Dr. Vu Nhu Nguyen observed that Salinas had "normal strength" and no focal deficits (Tr. 301). February and April 2013 examinations of Salinas show normal muscle strength, no muscular atrophy, and no sensory deficits (Tr. 18-19, 316, 321). Salinas has pointed to some contrary evidence showing that

10

she met the requirements of Listing 1.04A; however, she has failed to establish that she met the listing over a period of time. 20 C.F.R. part 404, subpt. P, app. 1. § 1.00D. Because the medical evidence does not consistently demonstrate the presence of "limitation of motion of the spine, motor loss [atrophy with associated muscle weakness or muscle weakness] accompanied by sensory or reflex loss," Salinas has failed to establish that she had an impairment that satisfied Listing 1.04A. *See* 20 C.F.R. part 404, subpt. P, app. 1, § 1.04A.

Salinas' argument in essence asks this Court to reweigh the evidence in the record and conclude that the ALJ erred at step three. However, such an exercise is inappropriate. "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Because substantial evidence supports the ALJ's decision and Salinas failed to satisfy her step-three burden, the Court AFFIRMS the ALJ's decision.

### IV. Conclusion

In summary, the Court finds that the ALJ applied the proper legal standards to Salinas' case, and that her findings are supported by substantial evidence in the record. The decision of the Commissioner of the Social Security Administration is therefore AFFIRMED.

SIGNED this 28th day of July, 2016.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE